THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MIGUEL ANDINO QUINTANA, Defendant and Appellant.

No. 16022. Argued November 1, 1955.—Decided November 3, 1955.

*Rafael A. Arroyo Ríos* for appellant. *José Trías Monge, Attorney General,* and *Rafael L. Ydrach Yordán* and *Ramón Olivo Nieves, Fiscal* and *Special Fiscal, respectively, of the Supreme Court,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Miguel Andino Quintana was charged with involuntary manslaughter in the Superior Court of Puerto Rico, Humacao Part, because "he unlawfully and while driving a motor vehicle did not employ due care and prudence, running and driving such vehicle at a speed of more than 15 miles an hour when passing a district where a public school was located [which] caused him to run over a boy six years old called Juan Rodríguez Amaral, as a result of which he died a few hours later." The case was heard by a court without a jury, and the presiding judge made the following statements at the end of the evidence for both parties:

"Defendant, rise. It appears from the evidence in this case that on the day of the occurrence this defendant was driving some students of the Academy of Humacao to the town of Juncos. That while traveling along the road between Las Piedras and Juncos and at a place where a public school sign was posted, the defendant was going at a speed of about 35 miles an hour on the insular highway. That shortly before the event in question, a wheel tractor with sugar cane cars was coming along. That from the left side of the road a child who is, rather who was, six and a half years old, crossed the highway and struck against the left fender of the automobile, as a result of which he died.

"That the defendant at no time saw the child when the latter struck the automobile on the left-hand side of the fender. That his attention was called and he stopped at a distance from the place of the accident. The Automobile and Traffic Act states the following:

" (Defendant is charged with involuntary manslaughter, that is, that he unlawfully, and while driving a motor vehicle did not employ due care and prudence, running and driving such vehicle at a speed of more than 15 miles an hour when passing a district where a public school is located.)

" 'The speed of a motor vehicle shall at all times be regulated with due care, and with due regard to the width, amount of traffic, use, and condition of the highway. No person shall drive at a speed higher than that which may permit him to exercise due control of the vehicle and to reduce the speed, or

to stop when necessary in order to avoid knocking down a person or to collide with any other vehicle or transportation device on the road or entering same, in compliance with the requirements of law and with the duty of exercising the due care to which drivers and other persons using the road are subject.'

"And paragraph (b) of this section, No. 15 states that a motor vehicle must not be operated at a speed of more than 15 miles an hour when passing a district where public schools are located.[1]

"It is an essential condition that an automobile passing a district where a public-school sign is posted must go at a speed of less than 15 miles an hour and this defendant was driving through that district at a speed of more than 15 miles an hour.

"It cannot be charged that the minor in this case was negligent and that his conduct was responsible for the accident in which he lost his life. When an automobile approaches a heavy vehicle coming in the opposite direction, it must reduce the speed as much as possible in order to avoid injury to any person or vehicle. When this driver was going past the wheel tractor loaded with sugar cane, he should have reduced the speed as much as possible in order to avoid this accident.

"The court believes that if this defendant had taken the necessary precautions required by law this accident would not have occurred. It finds him guilty of involuntary manslaughter."

The defendant moved for reconsideration immediately. After hearing the grounds for reconsideration, the trial judge once more stated the following:

"The Court again states that Jaime Ramírez González said that the defendant was going 35 miles an hour because he had looked at the speedometer, but that defendant was going at about 40 miles an hour because he was going downhill.

"The Court believes that in approaching the cane-loaded tractor he should have moved to the edge of the road and reduced his speed to the minimum and perhaps the result would have been different, because when a car is going 35 or 40 miles

---

[1] Paragraph (b) of § 15 of Act No. 279 of 1946 (Sess. Laws, p. 598), as amended by Act No. 156 of 1951 (Sess. Laws, p. 368) provides mainly that: "It shall be unlawful to operate a motor vehicle . . . at a speed of more than fifteen (15) miles an hour when passing a district where public schools are located."

an hour and hits a body in motion, the impact is greater than if it is going 5 or 10 miles an hour and hits that same body, and that is why I believe that the driver committed gross negligence because he was passing a school district where the reduction of speed is required and he failed to do so.

"The Court finds him guilty of involuntary manslaughter and dismisses the motion for reconsideration."

Later, the court sentenced the defendant to serve 6 months in jail. Defendant appealed from that judgment. He contends that the court erred (1) "in concluding by the mere consequences of the accident, that the true and proximate cause of the victim's death was the lack of care and prudence on the part of the defendant-appellant" and (2) "in weighing the evidence." Both the defendant and the prosecuting attorney discuss jointly the errors assigned. We shall do likewise.

 The defendant alleges, in the first place, that the evidence of The People was conflicting, that is, that there were contradictions in the testimony of Jaime Ramírez González and Amelia Amaral, and that it was an error to give credit only to the testimony of the first of those two witnesses. We disagree. Frequently, there are contradictions in the whole evidence introduced by one and the same party, but that does not mean that for such reason the court must reject the whole evidence introduced by such party. The trial judge was the one called upon to settle any conflict that might exist, and which in this case did exist in the evidence. He did so and gave credit only to the testimony of the boy Jaime Ramírez González.[2] He did not err. The

---

[2] Jaime Ramírez González testified, as accurately summarized by the special prosecuting attorney: "that he is 11 years old; that he lives in Juncos and attends the seventh grade in San José Academy in the town of Humacao (Tr. E. 7). That on November 8, 1954, he left his house in Juncos on his way to school in a station wagon as he usually did. He knows the defendant since he traveled almost every day to and from school (Tr. E. 8) in a Ford station wagon. Specifically on November 8, 1954, about 3:00 to 3:15 in the afternoon he left school and Miguel (the defendant whom he points out) had his station wagon parked in front of the school. He got into the vehicle and when eight more

findings made by him are fully supported by the evidence and they should not be disturbed. *People* v. *Bastián,* 71 P.R.R. 789.

■ The trial judge did not say that the real and proximate cause of the death was the lack of prudence and care on the part of the defendant. His conclusion was that the proximate cause of the accident was the fact that the appellant was guilty of negligence in driving his vehicle at an excessive speed in a zone where, by express provision of law, vehicles are required to run at a moderate speed, that is, not more than 15 miles an hour.

Of course, the trial court erred in stating that "when an automobile approaches a heavy vehicle coming in the opposite direction, it must reduce the speed as much as possible in order to avoid knocking down a person or colliding with any other vehicle. When this driver was going past the wheel tractor loaded with sugar cane, he should have reduced the speed as much as possible in order to avoid this accident." Neither the Automobile and Traffic Act (Act No. 279 of 1946, *supra*) nor any other law known to us imposes such

---

children arrived they left for Juncos. (Tr. E. 9) They went past Las Piedras and between this town and Juncos at a place called Guardarraya, when passing a sign which reads 'School' a tractor pulling two sugar cars came along. Immediately he heard a blow against the left fender of the station wagon and when he looked behind he saw a boy thrust into the air. Addressing the defendant he told him to stop because he had killed a boy. (Tr. E. 10) At that moment a truck was going by and the defendant stopped his vehicle and shifted into reverse gear. The truck had also stopped. (Tr. E. 11) The accident took place at a distance of about 25 yards from the school (Tr. E. 12) and the child fell at a distance of about 35 feet, more or less, from the school. (Tr. E. 15) When the station wagon hit the child, the first sign reading 'School' had been left behind. (Tr. E. 16) Miguel's station wagon was the one which hit the child. From Juncos to Las Piedras came a tractor, a truck and then another tractor. When the station wagon hit the child the tire of the last tractor was already about one foot away from the station wagon. (Tr. E. 18) The boy came out from behind the second car of the tractor and was hit by the left fender. The station wagon in which he traveled was running at a speed of 40 miles more or less. (Tr. E. 20) The needle (referring to the speedometer) indicated 35 miles an hour but since they were coming downhill he estimates that the car picked up speed to

obligation on a driver. What Act No. 279, in its § 17 (*e*), as amended by Act No. 96 of 1953 (p. 346), provides is that "Drivers or chauffeurs of vehicles running in opposite directions shall mutually cross each other by their respective right sides and shall mutually cede each other, whenever possible, not less than half of the most transited part of the vehicle roadway." Also in its § 17 (*a*), it provides in general terms that: "Persons operating motor vehicles on the public highways shall at all times exercise due care and take every reasonable precaution to insure the safety of persons and property." The error, however, does not warrant the reversal of the judgment since, in finding defendant guilty of the offense charged, the main reason of the trial judge was that he was guilty of negligence in driving his vehicle at a speed of more than 15 miles an hour when passing a school district.

◼ Even assuming that the minor was guilty of negligence by suddenly darting out from the side of the road where the defendant's vehicle was going, such negligence must not exculpate the defendant since pursuant to our ruling in *People* v. *Guadalupe*, 62 P.R.R. 252, 253, "A homi-

---

about 40 miles. The defendant did not sound his horn. (Tr. E. 21) From the place where the vehicle hit the child up to where it came to a stop after applying the brakes, there is a distance of about 46½ feet according to measurements taken in the court. (Tr. E. 22)

"On cross-examination he testified that he was sitting in the middle seat of the station wagon at the left-hand side close to the door. (Tr. E. 24) He already knew Miguel, the defendant, and the station wagon was the one which they ordinarily used to go to Juncos. (Tr. E. 26) The cars of the tractor were loaded with cane or with cane ratoon. The accident took place immediately upon overtaking the two cars of the tractor. Following was a truck and then another tractor. (Tr. E. 26) He told the defendant that he had killed a boy at the same time that he saw the truck coming out of the curve. When the station wagon went past the tractor it did not collide with any part of it since the cane cars were going on their right. (Tr. E. 27) When he told Miguel that he had killed a child, Miguel applied the brakes and stopped about 4 or 5 feet away. (Tr. E. 29) The little boy came out from behind the sugar cane car. (Tr. E. 30) When Miguel stopped the vehicle and alighted he was nervous. (Tr. 32) A woman carried the boy and they sat him on the front seat of the station wagon and left for Humacao. (Tr. 33.)"

cide caused by the culpable negligence of the defendant is manslaughter, whether the deceased's failure to use due care contributed to the accident or not. . . . the negligence of the victim would exculpate the defendant from criminal liability only if the negligence of the former were the sole cause of his death." In *People* v. *Rivera,* 65 P.R.R. 299, we ratified the former doctrine but we exculpated the defendant because we concluded that the victim's negligence had been the sole and proximate cause of the accident. See also *People* v. *López,* 77 P.R.R. 573.

Since the errors assigned were not committed, the judgment will be affirmed.